UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:11-cr-00427-HDM-CWH |
| | ) | 2:13-cv-01068-HDM |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| JOSE RIVERA-CARBAJAL, | ) | |
| | ) | |
| Defendant. | ) | |

On June 7, 2012, defendant pled guilty to a single-count indictment charging him with being a deported or removed alien unlawfully found in the United States. Defendant pled without the benefit of a plea agreement. On November 13, 2012, the court sentenced defendant to 51 months imprisonment. Defendant appealed. On June 21, 2013, the Ninth Circuit affirmed the court's judgment. Presently before the court is defendant's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (#43). The government has responded (#51). Defendant has not filed a reply, and the time for doing so has expired.

1

Pursuant to § 2255, a federal inmate may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Id.* § 2255.

Defendant advances two grounds for relief, both asserting ineffective assistance of counsel. Ineffective assistance of counsel is a cognizable claim under § 2255. *Baumann v. United States*, 692 F.2d 565, 581 (9th Cir. 1982). In order to prevail on a such a claim, the defendant must meet a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253(9th Cir. 1986). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 787-88 (2011). Second, the defendant must show that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. This requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**I. Ground One – Plea Agreement**

Defendant's first ground for relief asserts that his pretrial counsel, Johnathan Sussman, was ineffective with respect to a "fast track" plea agreement offered by the government. Ineffective assistance of counsel claims may be based on alleged deficiencies during the plea bargaining stage. *See Missouri v. Frye*, — U.S. – , 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, – U.S. –, 132 S. Ct. 1376 (2012). The following facts relevant to defendant's claim appear from the record.

At a calendar call on March 27, 2012, the court granted the parties' stipulation to continue the trial from May 2, 2012, to June 5, 2012. According to defendant, "just minutes prior" to the calendar call, Sussman advised him that the government was offering him a "fast track" plea agreement. (Def. Mot. 12). On May 8, 2012, the parties filed a memorandum indicating defendant intended to plead guilty without a plea agreement. A change of plea hearing was set for June 7, 2012. At the hearing, the court asked defendant whether his attorney had "been responsive to everything [he had] wanted him to do on [his] behalf?" *Id.* at 3. Defendant responded: "So far he is, yes, so far." *Id.* The government, represented by Robert Bork, noted for the record that it had extended a fast track plea offer to defendant but that defendant had rejected the offer:

> MR. BORK: Your Honor, if I may, consistent with the Court's recent comments about your concern that you put on the record if there's been plea offers made, there was a plea offer made in this case under our Fast Track Program. The benefit would have been the binding plea, where the government would have moved for a two-level reduction; and, in all likelihood, would have also moved for the third point. So, that would

| | | |
|---|---|---|
| 1 | | have been a three-point benefit down to offense level 19. But, that has been rejected. |
| 2 | | |
| 3 | THE COURT: | All right. Did that -- did you get that plea agreement offered to you? |
| 4 | DEFENDANT: | Yes, Your Honor. |
| 5 | THE COURT: | And you discussed it with your attorney? |
| 6 | DEFENDANT: | Yes, I did. |
| 7 | THE COURT: | Now I don't want to know what you talked about, but was it your final decision? You made the final decision, did you, to reject that plea agreement? |
| 8 | | |
| 9 | | |
| 10 | DEFENDANT: | Yes, Your Honor. |
| 11 | THE COURT: | And did your attorney force you to make that decision? |
| 12 | DEFENDANT: | No, Your Honor. |
| 13 | THE COURT: | Did you do it of your own free will? |
| 14 | DEFENDANT: | Yes, sir. |

15 (Doc. #41 (Change of Plea Tr. 13-14)).

16 At his sentencing on November 13, 2012, defendant raised the

17 issue of the rejected plea, saying:

18     Okay. Your Honor, the only reason my previous
attorney -- the only reason that I didn't
19     accept the deal there for 37 months is because
he just offered me the Fast Track. He never
20     told me how many months I was -- he was giving
me -- I mean they were offering me until I came
21     to the court, And then I say no. But I was
never, I never aware of what they were going to
22     give me or were offering me. The only time that
they -- you know, they granted Fast Track, but
23     that was it. And then they call me to court.
And that was the only reason why I didn't
24     accept it.

25 (Doc. #42 (Sentencing Tr. 37)). To this, the government responded:

26     Your Honor, just for the record, I make notes
when I have hearings, and I will note that
27     first in my file is an unexecuted plea
agreement -- pardon me -- that has the offense
28     level listed in there. We never agree to

> criminal history category. And my notes show
> that when Mr. Sussman was his attorney back in
> June when he pled, that we waited for over an
> hour, and then he came out and told me that the
> defendant did not want the Fast Track. And so
> that's the records I have from that hearing.

*Id.* at 37-38. The government's representation that "we waited for over an hour" is corroborated by the record, which shows that although the change of plea hearing was scheduled for 10:30 a.m., it did not begin until 11:44 a.m.

Defendant admits that he was aware of the plea offer but argues that he rejected it because Sussman was ineffective. While defendant's assertions of Sussman's ineffective acts and omissions are numerous, they all boil down to one simple allegation: that Sussman failed to timely and adequately explain the fast track plea offer. Defendant argues that if the offer had been sufficiently explained to him, he would have accepted it. Had defendant accepted the plea offer, his sentence would very likely have been lower than the sentence he is currently serving.

For several reasons, the court finds defendant's current contention that he rejected the plea offer because it wasn't sufficiently explained unsupported by the record. At his change of plea hearing, defendant expressly stated that he had discussed the fast track plea offer with Sussman, that he had rejected the offer of his own free will, and that he was satisfied with Sussman's representation. Defendant did not at that time indicate that he did not understand the plea agreement or that he needed more time to consider it. In addition, although defendant stated at sentencing that Sussman had not told him how many months he would get under the agreement, defendant has not alleged that he did not

understand that his sentence would be lower with a plea agreement. Finally, by pleading without the benefit of a plea agreement, defendant preserved his appellate rights. The fact that defendant subsequently appealed his sentence persuades the court that defendant made an informed and considered decision to take his chances on appeal rather than waive that right in exchange for a reduced sentence.

The court finds defendant's assertion that Sussman did not explain the plea agreement to him also palpably incredible. First, as just noted, defendant told the court that he had discussed the plea offer with Sussman. Further, more than two months passed between the time defendant learned of the plea offer and the time he changed his plea. Even if Sussman was difficult to reach during that time period, defendant had at least an hour to go over the plea agreement with Sussman before entering his change of plea. The court finds it highly improbable that during this time period Sussman did not explain the offer to defendant.[1]

In sum, the record clearly shows that defendant made a considered and informed decision to plead guilty without an agreement and that his decision to reject the plea offer was not based on ineffective conduct of his counsel. Ground One is therefore without merit.

**II. Ground Two – Sentencing Enhancement**

Defendant's second ground for relief challenges his sentencing

---

[1] There is no evidence before the court that defendant was compelled to accept or reject the plea offer at the March 27, 2012, hearing. However, even if he had been, his statements to the court at his change of plea hearing indicate that his decision to reject the plea offer was considered and informed.

6

and appellate counsel's failure to object to or appeal the 16-level enhancement for a crime of violence that was applied to his sentence.

Pursuant to United States Sentencing Guidelines § 2L1.2(b)(1)(A)(ii), a 16-level enhancement is applied to a defendant's sentence if the defendant unlawfully entered or remained in the United States after being convicted of a "crime of violence." A crime of violence includes a conviction for a felony that is an "offense under federal, state or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* app. n.1(b)(iii).

The conviction for which defendant received the enhancement was a battery constituting domestic violence, third offense, under Nev. Rev. Stat. §§ 200.481, 200.485 and 33.018. Under Nevada law, a battery constituting domestic violence, *id.* § 33.018, has as an essential element a "battery," which is defined as "any willful and unlawful use of force or violence upon the person of another," *id.* § 200.481. Because it was his third offense, the conviction was a felony. *Id.* § 200.485.

Defendant can establish neither ineffective assistance of counsel nor prejudice from counsel's failure to raise this issue. The judicially noticeable documents underlying defendant's conviction – which were in the possession of the United States Probation Office and available to defendants' counsel – clearly showed that defendant had admitted to conduct that qualified as a crime of violence under § 2L1.2(b)(1)(A)(ii). In his written guilty plea agreement, defendant "agree[d] to plead guilty to BATTERY CONSTITUTING DOMESTIC VIOLENCE – 3RD OFFENSE . . . as more

7

fully charged in the charging document" and admitted "the facts which support all the elements of the offense(s) to which I now plead as set forth in the charging document". The charging document (the amended information) charged defendant with "grabbing" his wife "by the hair and wrist, forcing her to the floor, and dragging [her] across the floor." These documents thus clearly show that the facts underlying defendant's conviction involved "the use of physical force against the person of another."

Counsel considered the documents underlying defendant's conviction in deciding whether and how to object to the 16-level enhancement. (*See* Doc. #53 (Riddle & Shell Decls.)). Further, at the time of defendant's sentencing, both the guilty plea and the charging document would have been properly considered by the court in evaluating whether defendant's conviction was a crime of violence. *See United States v. Gomez-Leon*, 545 F.3d 777, 784 (9th Cir. 2008). Because the documents show that defendant's conviction qualified as a crime of violence, any objection or appeal to the contrary would have been rejected. Therefore, counsel were not ineffective for failing to raise the issue nor was defendant prejudiced by their conduct in this regard. *See Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) (an attorney's failure to raise a meritless legal argument is not ineffective assistance of counsel).

### III. Certificate of Appealability

The standard for issuance of a certificate of appealability calls for a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484).

The court has considered the issues raised by defendant with respect to whether they satisfy the standard for issuance of a certificate of appeal and determines that none meet that standard.

9

The court will therefore deny defendant a certificate of appealability.

**Conclusion**

Defendant has failed to establish that any of his attorneys rendered ineffective assistance of counsel. To the extent any of defendant's specific arguments have not been not addressed in this order, the court finds them to be without merit. Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (#43) is accordingly **DENIED.**

IT IS SO ORDERED.

DATED: This 4th day of March, 2014.

*Howard D. McKibben*
_____
UNITED STATES DISTRICT JUDGE